UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANDRA WILLIAMS,

       Plaintiff,

v.                               Case No: 8:14-cv-1254-T-36TBM

EDUCATIONAL CREDIT
MANAGEMENT CORPORATION and
PERFORMANT RECOVERY, INC.,

       Defendants.
_____/

## **ORDER**

      This cause comes before the Court upon the Defendant Educational Credit Management Corporation's ("ECMC") Motion to Dismiss Complaint (Doc. 15). Plaintiff Sandra Williams responded in opposition to the motion (Doc. 23). ECMC replied in further support of its motion (Doc. 27). Defendant Performant Recovery, Inc. ("Performant") filed a Notice of Joinder to ECMC's Motion to Dismiss Complaint and Request for Leave to File this Notice Out of Time (Doc. 24). Plaintiff filed a response in opposition to Performant's notice of joinder (Doc. 28). The Court, having considered the parties' submissions and being fully advised in the premises, will now GRANT-IN-PART and DENY-IN-PART ECMC's Motion to Dismiss and DENY Performant's Notice of Joinder as it is a nullity.

## I.      STATEMENT OF FACTS[1]

---

[1] The following statement of facts is derived from Plaintiff's Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

This dispute arises over the actions taken by ECMC and its agent, Performant, to collect on the unpaid student loans of one "Sandra Williams."  ECMC first made contact with Plaintiff in April 2010 by sending her a letter claiming that she had defaulted on her student loans.  Doc. 1 ("Compl.") ¶ 15.  Later that month, ECMC sent Plaintiff another letter, again attempting to collect on the loan.  *Id.* ¶ 17.  Although Plaintiff shares the name of the debtor listed on the letters, she has never taken out a student loan.  *Id.* ¶ 16.  Plaintiff therefore contacted Life Lock, a company that provides credit protection services, regarding the letters.  *Id.* ¶ 18.  A Life Lock agent, Kathy McCollock, identified this tactic as a common scam to gather an individual's personal information, and informed Plaintiff that she should not give out personal information, including her Social Security Number ("SSN").  *Id.*

In May 2010, Plaintiff called ECMC to inform them that she did not have any outstanding student loans.  *Id.* ¶ 19.  ECMC's agent asked for her SSN, but Plaintiff declined to provide that information.  *Id.*  Later that same day, McCollock called ECMC's agent, asking him to return her phone call and to remove Plaintiff's name from ECMC's contact list.  *Id.* ¶ 20.  ECMC's agent never returned McCollock's phone call.  *Id.*

All was silent for over two years.  Then on August 7, 2012, Plaintiff received a letter from Performant attempting to collect on the defaulted student loan on behalf of ECMC.  *Id.* ¶ 21. Plaintiff promptly wrote back, disputing the validity of the debt.  *Id.* ¶ 22.  Performant responded with another letter attempting to collect the debt.  *Id.* ¶ 23.  On September 9, 2012, Performant sent Plaintiff yet another letter in an attempt to collect on the defaulted student loan.  *Id.* ¶ 24.  In response, Plaintiff retained the services of Attorney Robert Sammons, who sent a cease and desist letter to Performant on her behalf.  *Id.* ¶ 25.

Another year of silence passed.  But the matter apparently remained unresolved, because on September 17, 2013, yet another entity, Pioneer Credit Recovery, Inc. ("Pioneer"), sent Plaintiff a letter attempting to collect on the debt on behalf of ECMC.  *Id.* ¶ 27.  Sammons responded to Pioneer with a cease and desist letter on behalf of Plaintiff, instructing Pioneer that Plaintiff had retained counsel and that she was not the "Sandra Williams" identified in the letter.  *Id.* ¶ 28.  The letter also requested a verification and validation of the alleged debt.  *Id.*

Nevertheless, on October 14, 2013, Plaintiff received a letter from ECMC entitled "Notice of Default."  *Id.* ¶ 29.  Sammons again responded on Plaintiff's behalf with a cease and desist letter.  *Id.* ¶ 30.  Like the letter to Pioneer, this letter informed ECMC that Plaintiff had retained counsel and that she was not the correct "Sandra Williams," and requested a verification and validation of the debt.  *Id.*  On October 25, 2013, ECMC responded directly to Plaintiff, acknowledging that they had received the correspondence from Sammons but that they would continue to treat the debt as outstanding unless Plaintiff provided ECMC with copies of her social security card, birth certificate, and driver's license.  *Id.* ¶ 31.

On January 28, 2014, ECMC sent yet another letter attempting to collect on the debt.  *Id.* ¶ 32.  Plaintiff brought the instant action in response, alleging that ECMC, Performant, and Pioneer's actions violated the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").[2] She asserts that ECMC violated various provisions of the FCCPA—specifically, Fla. Stat. §§ 559.72(3), (7), (9), and (18) (Count I).  And she asserts that Performant violated various provisions of the FCCPA (Count II) and the FDCPA (Count III).

---

[2] Pioneer has since been dismissed from this action.  *See* Docs. 11 and 12.

ECMC now seeks to dismiss the claims against it and Performant.  It argues that the FCCPA claims are preempted by the Higher Education Act, 20 U.S.C. § 1001 *et seq.* ("HEA"), and that, in the alternative, Plaintiff has failed to state a claim upon which relief can be granted.  With regard to the FDCPA claim against Performant, ECMC argues that Plaintiff has also failed to state a claim for relief, and that, in the alternative, the FDCPA's exceptions for creditors and bona fide fiduciaries bar Plaintiff's claim.

## II.     LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Furthermore, mere naked assertions are not sufficient.  *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id.*

## III.    DISCUSSION

### A.     Motion to Dismiss Claims against Performant

As an initial matter, the Court will address whether ECMC may seek to dismiss the claims against its co-defendant Performant.  The answer, of course, is no.  Regardless of the alleged agency relationship between ECMC and Performant, they are still separate entities.  The motion to dismiss was filed only by ECMC, and may seek relief only as it relates to ECMC.  Further,

Performant's attempt to join ECMC's motion is improper.  Even if the Court were to excuse the untimely and unclear nature of the attempted joinder, Performant has already filed an Answer to the Complaint, *see* Doc. 8, thus rendering any Rule 12 motion to dismiss a nullity.  *See* Fed. R. Civ. P. 12(b) ("A motion asserting any [Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed."); *see also Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 971 n.6 ("After answering the complaint, the defendants filed Rule 12(b)(6) motions to dismiss . . . . Under Rule 12(b), these motions were a nullity; by filing an answer, the defendants had eschewed the option of asserting by motion that the complaint failed to state a claim for relief.").

The arguments relating to the claims against Performant are not properly before the Court. The Court will therefore deny ECMC's motion to dismiss as to Counts II and III.  Further, because Performant's joinder to the motion to dismiss would be futile, the Court will also deny Performant's notice of joinder as it is a nullity.

**B.      Motion to Dismiss Claim against ECMC**

*1.      "Creditor" Exception to the FCCPA*

The Court will first resolve ECMC's contention that Plaintiff's FCCPA claim must fail because Fla. Stat. § 559.72 applies only to debt collectors, but Plaintiff has alleged that ECMC is a "creditor" as defined by Fla. Stat. § 559.55(5), *see* Doc. 1 ¶ 9.[3]  In support of its assertion that Section 559.72 applies only to debt collectors, ECMC does not cite the statutory language.  ECMC also does not cite any binding case law.  Rather, ECMC cites only: (1) Plaintiff's opposition brief; (2) an unpublished opinion from the Northern District of Florida; and (3) an opinion that is

---

[3] The Complaint references Fla. Stat. § 559.55(3), which was the provision that defined "creditor" at the time the Complaint was filed.  The definition of creditor is the same in both versions of the statute. To the extent any outdated references appear in the parties' submissions, the Court will update them in this opinion to reflect the most recent version of the statute.

irrelevant to the point it is seeking to make.  *See* Doc. 27 at 4 (citing *Freeman v. Great Lakes Educational Loan Servs.*, Case No. 12-cv-331, 2013 WL 2355541, at *7 (N.D. Fla. May 28, 2013); *Eke v. FirstBank Florida*, 779 F. Supp. 2d 1354, 1357 n.1 (S.D. Fla. 2011) (noting that "*Sections 559.553 and 559.555* of the Florida Statutes govern the practices of 'debt collectors.'") (emphasis added)).

Notably, ECMC ignores the plain language of § 559.72, which states simply that "*no person shall*" engage in the enumerated debt collection practices.  And, more troubling, ECMC also ignores the well-established body of case law which clearly indicates that § 559.72 is not restricted to debt collectors.  *See, e.g.*, *Gann v. BAC Home Loans Servicing LP*, 145 So. 3d 906, 910 (Fla. 2d DCA 2014) ("Florida courts have recognized that the FCCPA applies not only to debt collectors but also to any 'person'"); *Morgan v. Wilkins*, 74 So. 3d 179, 181 (Fla. 1st DCA 2011) ("Appellees concede that the trial court was in error when it ruled that FCCPA pertains only to debt collectors"); *Schauer v. Gen. Motors Acceptance Corp.*, 819 So. 2d 809, 812 (Fla. 4th DCA 2002) ("While the Act does not define the term 'person,' it is not restricted to debt collectors."); *Kelliher v. Target Nat'l Bank*, 826 F. Supp. 2d 1324, 1327 (M.D. Fla. 2011) ("Although the federal FDCPA does not apply to original creditors, the FCCPA has been interpreted to apply to original creditors as well as debt collection agencies.").  ECMC's contention that § 559.72 contains some sort of debt collector exception is clearly without merit,[4] and ECMC has not set forth any other reason as to why it should not be considered a "person" covered under § 559.72.  *Accord Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1372 (S.D. Fla. 2011).  The Court therefore will not dismiss the claim against ECMC on this basis.

---

[4] The Court will take this opportunity to remind ECMC's counsel that, as an officer of the court, he is obligated to undertake a reasonable inquiry as to the legal contentions that he asserts.  *See* Fed. R. Civ. P. 11(b)(2).

2.      *Preemption by the HEA*

ECMC next argues that the HEA preempts Plaintiff's FCCPA claim.  The Supremacy Clause of Article VI of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., art. VI, cl. 2.  "Congress's intent to preempt state law may be explicitly stated in the language of a federal statute or implicitly contained in the structure and purpose of the statute."  *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1122 (11th Cir. 2004).  The Supreme Court has identified three types of preemption:  (1) express preemption; (2) field preemption; and (3) conflict preemption.  *See id.* (citing *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 604-05 (1991)).  "'Express preemption' occurs when Congress has manifested its intent to preempt state law explicitly in the language of the statute."  *Id.*  "Field preemption" occurs when federal regulation in a legislative field is so pervasive that it can reasonably be inferred that Congress left no room for the states to supplement it.  *See id.*  And "conflict preemption" arises when "it is impossible to comply with both federal and state law," or when "state law stands as an obstacle to achieving the objectives of the federal law."  *Id.*  Regardless of the type of preemption, courts "start with the assumption that the historic police powers of the states are not superseded by federal law unless preemption is the clear and manifest purpose of Congress."  *Id.*

a.      **The HEA**

Congress enacted the HEA to address the need to provide financial assistance to students in higher education.  *See Payco*, 363 F.3d at 1122.  Title IV of the HEA authorizes the Secretary of Education to administer a number of federal student loan and grant programs.  *See id.*  Under these programs, lenders issue to students and their parents loans under favorable terms that are

guaranteed by guaranty agencies and ultimately by the federal government.  *See id.*  Because the United States guarantees these loans, it has an interest in protecting itself against the risk of unreasonable loss by ensuring that lenders employ due diligence in the collection of these loans. *See id.*

To carry out the purpose of the loan programs, the HEA authorizes the Secretary of Education to promulgate regulations that apply to third party servicers.  *See, e.g.*, 20 U.S.C. § 1082(a)(1).  The Secretary of Education has, accordingly, issued detailed regulations that set forth mandatory minimum procedures regarding the diligent collection of defaulted student loans.  *See* 34 C.F.R. § 682.410(b)(6).

ECMC argues that this regulation preempts Plaintiff's claim.[5]  Specifically, it asserts that the regulation's express preemption clause applies, *see* 34 C.F.R. § 682.410(b)(8), or that, in the alternative, conflict preemption applies.  At the outset, the Court rejects ECMC's suggestion that "state claims are preempted in any circumstance where state law would otherwise regulate pre-litigation collection activity," Doc. 15 at 8.  This argument is premised on *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996), which is not binding on this Court, and which has been criticized by the Eleventh Circuit for failing to engage in a provision-by-provision preemption analysis, *see Payco*, 363 F.3d at 1129-30.  The Eleventh Circuit's decision is more persuasive, and, in any case, is the one that is binding on this Court.  The correct analysis is therefore whether a claim arising under each of the asserted provisions of the FCCPA is

---

[5] Preemption may result from regulations promulgated by a federal agency acting within the scope of its congressionally delegated authority.  *See Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 369 (1986).  The parties do not dispute that this regulation was promulgated within the scope of congressionally delegated authority.

preempted, not whether the FCCPA as a whole is preempted for regulating pre-litigation collection activity.

Because the express preemption clause in 34 C.F.R. § 682.410 provides essentially the same standard of review as conflict preemption, the Court will proceed to analyze ECMC's express and conflict preemption arguments together.  *See* 34 C.F.R. § 682.410(b)(8) ("The provisions of . . . this section preempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements of these provisions.").

**b.      Fla. Stat. § 559.72(3)**

Florida Statutes § 559.72(3) provides that "no person shall . . . [t]ell a debtor who disputes a consumer debt that [the person attempting to collect the debt] will disclose to another . . . information affecting the debtor's reputation for credit worthiness without also informing the debtor that the existence of the dispute will also be disclosed as required by subsection (6)." ECMC argues that Plaintiff's claim under this section is preempted because it is "expressly *required* to send notices [that] 'notify the borrower that the agency will report the default to all nationwide consumer reporting agencies to the detriment of the borrower's credit rating.'"  Doc. 15 at 11-12 (quoting 34 C.F.R. §682.410(b)(5)(vi)(F)).  The Court is not persuaded.

*First*, there is no reason why it would be impossible to comply with both the federal regulation and the state law.  All the federal regulation requires is that a guaranty agency send a notice that notifies the borrower that it will report a default to consumer reporting agencies—and ECMC points to no provision which requires that a guaranty agency *not* inform the debtor that the existence of any dispute will also be disclosed, or that precludes the disclosure to consumer reporting agencies of the existence of any dispute, as required by § 559.72(6).  *Second*, ECMC has set forth no reason why requiring a guaranty agency simply to inform the debtor that the existence

of any dispute will also be disclosed as required would conflict with or otherwise hinder the satisfaction of its mandated debt collection activities.  Indeed, although § 559.72(3) appears to impose a disclosure requirement that is not necessarily dictated by the federal regulation, there is simply no evidence that permitting Plaintiff's claim to proceed would stand as an obstacle to achieving the objectives of the federal regulation.

The Court will therefore deny ECMC's motion to dismiss as it relates to Plaintiff's claim for a violation of § 559.72(3).  *Accord Payco*, 363 F.3d at 1130 (recognizing that although the statute of limitations under the FCCPA is longer than the one under the FDCPA, nevertheless holding that plaintiff's FCCPA claim was not preempted because the FCCPA's extended limitations period "does not present such a threat to the continued participation of lenders in federal student loan programs that the Florida Act can be deemed to obstruct the accomplishment of the objectives of the HEA.").

### c.      Fla. Stat. § 559.72(7)

Florida Statutes § 559.72(7) provides that "no person shall . . . [w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."  ECMC argues that Plaintiff's claim under this section is preempted by 34 C.F.R. § 682.410(b)(6)(i), which requires that a guaranty agency "engage in reasonable and documented collection activities on a loan on which it pays a default claim filed by a lender."  The Court agrees.

To begin with, the Court notes that it is not impossible to comply with both the federal regulation and the state law.  Indeed, nothing in the federal regulation requires that a guaranty agency behave *unreasonably* in its attempts to collect on a defaulted loan.  However, permitting

Plaintiff's § 559.72(7) claim to proceed would stand as an obstacle to achieving the objectives of the federal regulation.  The purpose of the federal regulation is to ensure that a guaranty agency will be diligent in its efforts to collect on a defaulted loan.  Subjecting guaranty agencies to litigation and trial to resolve whether their debt collection actions were "reasonable"—a determination that is inherently fact-intensive and subjective, *see Segal v. Nat'l Action Fin. Servs., Inc.*, Case No. 04-cv-2388, 2006 WL 449176, at *9 (M.D. Fla. Feb. 22, 2006)—would have a chilling effect on debt collection efforts and would hinder the satisfaction of the requirements of the federal regulation.

Plaintiff nevertheless argues that her claim is not preempted because the federal regulation applies only to borrowers, and she is not a borrower.  Apparently, Plaintiff is suggesting that if she were a borrower, her claim would be preempted, but since she is not, her claim is not preempted. The Court is unpersuaded by this argument, however, because imposing these two standards of legal liability would similarly frustrate the objectives of the federal regulation.  Guaranty agencies are mandated to exercise diligent efforts to collect on a defaulted loan, and subjecting them to liability in those instances in which they mistakenly seek to recover from an incorrect party would irreconcilably conflict with that mandate.

In sum, Plaintiff's claim for a violation of § 559.72(7) is preempted because it would stand as an obstacle to achieving the objectives of the federal regulation.  Accordingly, the Court will grant ECMC's motion to dismiss as it relates to Plaintiff's claim for a violation of § 559.72(7).

### d.      Fla. Stat. § 559.72(9)

Florida Statutes § 559.72(9) provides that "no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."  ECMC argues that

11

Plaintiff's claim under this provision is preempted by the federal collection requirements set forth in 34 C.F.R. § 682.410(b)(6), which consist of a specific set of actions a guaranty agency must take in attempting to collect on a defaulted loan.  The Court disagrees.  It is clearly possible to comply with both the HEA and § 559.72(9), and there is no conflict between the Florida provision and the federal regulation.  Indeed, as stated by the Eleventh Circuit:

> For us to conclude that this provision of the Florida Act hinders the completion of the sequence of collection activities, we would have to first conclude that the regulations require a third-party debt collector to attempt to collect a debt that it knows is not legitimate or to assert the existence of a legal right that it knows does not exist. We are certain that the HEA and its regulations do not contemplate third-party debt collectors attempting to collect debts that are not legitimate or asserting rights that do not exist.

*Payco*, 363 F.3d at 1129.  Tellingly, ECMC advances no evidence in support of its argument and only asserts in a conclusory manner that "[the] federal collection requirement preempts Plaintiff's misidentification claims under Florida Statute § 559.72(9)."  Doc. 15 at 11.  The Court will therefore deny ECMC's motion to dismiss to the extent that it argues that Plaintiff's claim under § 559.72(9) is preempted by the HEA.

### e.      Fla. Stat. § 559.72(18)

Florida Statutes § 559.72(18) generally prohibits a person who is attempting to collect on a debt from communicating with the debtor if the person knows that the debtor is represented by an attorney with respect to that debt.  ECMC argues that Plaintiff's claim under this provision is preempted by the federal collection requirements set forth in 34 C.F.R. § 682.410(b)(6).  The Court agrees.  *First*, it is impossible for a guarantor to comply with both the FCCPA and the federal regulations, because one mandates, without exception, direct communications with the borrower, while the other prohibits such communications if the borrower is represented by an attorney.  *Compare, e.g.*, 34 C.F.R. 682.410(b)(6)(ii) ("the agency *must* send a notice *to the borrower*") *with*

12

Fla. Stat. 559.72(18) ("*no person shall* . . . [c]ommunicate *with a debtor*") (emphases added). *Second*, imposing this requirement would hinder the satisfaction of the mandated debt collection steps. *Accord Fischer v. UNIPAC Serv. Corp.*, 519 N.W. 2d 793, 798-99 (Iowa 1994) (holding that the HEA preempts a similar provision under the Iowa Consumer Credit Code). *Finally*, as discussed in Section III.B.2.c, *supra*, the Court rejects Plaintiff's argument premised on the fact that she is not the "borrower." The Court will therefore grant ECMC's motion to dismiss as to Plaintiff's claim for a violation of Section 559.72(18).

### 3.    *Failure to State a Claim for Violation of Fla. Stat. § 559.72(9)*

ECMC finally argues that Plaintiff has failed to state a claim for a violation of Florida Statute § 559.72(9) because she has not adequately alleged that ECMC knew that the debt it was attempting to collect was not legitimate. The Court disagrees. The Court recognizes that Section 559.72(9) requires actual knowledge. *See Bacelli v. MFP, Inc.* 729 F. Supp. 2d 1328, 1337 (M.D. Fla. 2010). Plaintiff, however, was not required to specifically allege that ECMC had any documentation that would establish actual knowledge that she did not in fact owe the debt. Rather, in opposing a motion to dismiss, the non-moving party is entitled to all reasonable inferences that can be drawn from the well-pleaded facts in the complaint. *See Iqbal*, 556 U.S. at 663.

Accepting the facts alleged in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has stated a plausible claim for relief under § 559.72(9). Specifically, Plaintiff has alleged that: (1) ECMC consented to and has knowledge and control of the collection activities of its agents, Compl. ¶ 10; (2) she personally informed ECMC and its agent on two separate occasions that she was not the owner of the debt, *id.* ¶¶ 19, 22; (3) a Life Lock representative contacted ECMC about the mistaken identity, *id.* ¶ 20; and (4)

her attorney informed ECMC and its agents on three separate occasions that she was not the owner of the debt, *id.* ¶¶ 25, 28, 30.

Plaintiff's allegations establish that several different parties informed or attempted to inform ECMC on no less than half a dozen separate occasions that Plaintiff did not own the debt, and permit the Court to reasonably infer that, at some point, ECMC gained actual knowledge that Plaintiff was not the owner of the debt. *Accord Martorella v. Deutsche Bank Nat'l Trust Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013) (finding knowledge adequately alleged where plaintiff asserted that she notified defendant of its error but defendant nevertheless proceeded with its debt collection activities). Further, for purposes of resolving this issue, the Court need not determine specifically after which communication it could reasonably be inferred that ECMC gained actual knowledge, because Plaintiff alleges that ECMC continued its collection activities even after all of these communications, Compl. ¶ 31-32. Plaintiff has adequately stated a claim for a violation of Section 559.72(9). Accordingly, the Court will deny ECMC's motion to dismiss Plaintiff's claim for a violation of that section.

## IV. CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED**:

1.     ECMC's Motion to Dismiss (Doc. 15) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2.     The violations of Florida Statutes §§ 559.72(7) and 559.72(18) alleged in Count I are hereby **DISMISSED**. The Motion to Dismiss is **DENIED** as to the remainder of Count I and **DENIED** as to Counts II and III.

3.     Performant's Notice of Joinder (Doc. 24) is **DENIED as it constitutes a nullity**.

**DONE AND ORDERED** in Tampa, Florida on February 26, 2015.

14

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any